# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI LEE MCGOWAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-CV-467-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Terri Lee McGowan seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9].

On April 21, 2005, plaintiff protectively filed an application for supplemental security income, alleging an onset date of August 24, 2003. [R. 32, 71]. Her application was denied initially on August 10, 2003, and again on reconsideration July 14, 2006. Plaintiff filed a written request for a hearing on September 16, 2006. The Administrative Law Judge (ALJ) conducted an initial hearing on May 13, 2008. On October 29, 2008, the ALJ denied plaintiff benefits. Following the entry of the decision, the Appeals Council denied plaintiff's request for review on May 18, 2009. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481. On May 26, 2009, plaintiff timely filed her appeal with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports the decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of impairment and the severity of the impairment during the relevant adjudicated period. 20 C.F.R. § 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C.§ 423 (d)(3), and 20 C.F.R. § 416.913.

Plaintiff raises two issues on appeal:

(1) The ALJ erred by formulating a residual functional capacity ("RFC") assessment that failed to include all of plaintiff's mental limitations.

(2) The ALJ erred at step five by determining there was other work she could perform.

[Dkt. # 16 at 6].

## **Background**

Plaintiff was born on December 10, 1960, and was 47 at the time of her hearing before the ALJ. [R. 1005]. She is 5'5" tall and weighs 130 pounds. [R. 1005]. It is unclear whether plaintiff has an eleventh grade education or whether she graduated from high school. [R. 182, 1007]; [Dkt. #16 at 2]. Plaintiff worked as a server in a restaurant from 1991 to 1994 and again in 2002. [R. 95]. She has been widowed once, has two grown sons, and has lived with her boyfriend in a shared mobile home for five years. [R. 1023, 1006]. Plaintiff alleges that her mental problems, seizures, bronchitis, and left shoulder pain culminated in her becoming disabled on August 24, 2003, when she overdosed on her prescription of Xanax pills and was hospitalized. [Dkt. #16 at 2]; [R. 189].

The hospital diagnosed plaintiff with major depression and polysubstance dependence. [R. 189]. Subsequently, the Oklahoma Department of Corrections noted in 2004 and 2005 that plaintiff suffered from depression. [R. 234-51]. After her release from custody, plaintiff was regularly hospitalized with various health complaints. [R. 2-4]. On July 8, 2005, plaintiff complained of anxiety attacks while in treatment at OU Internal Medicine for a mass on her neck. [R. 312].

On June 27, 2006, the month before the Social Security Administration issued its denial on reconsideration, plaintiff entered St. John's Hospital complaining of seizures. The doctors at St. John's performed an EEG. The results were not consistent with seizure activity. [R. 578]. Neurology believed the "seizures" were "hysterical in nature," so the doctor declined to prescribe

her more seizure medicine, noting the risk of side effects and her lack of seizure activity. [R. 575-78].

In January of 2007, plaintiff was seen at three different hospitals within four days seeking pain medicine for a shoulder injury to her rotator cuff.[1] In April of 2007, St. John's admitted plaintiff for twelve days due to suicidal ideation. She confirmed Lortab and Xanax abuse, and the doctors diagnosed her with major depression. [R. 386]. While hospitalized, an MRI showed a progressive tear of the rotator cuff for which plaintiff was prescribed more pain medicine. [R. 386]. In June 2007, both OU-Internal Medicine and St. John's hospital treated plaintiff for pain from her shoulder injury. [R. 653, 532]. In August 2007, Claremore Regional admitted plaintiff for complaints of chest pains but ruled out any cardiac issue and eventually referred her to Grand Lake Mental Health. [R. 810]. During her admission to Claremore Regional, Psychiatrist Dr. Jeffrey McIlroy evaluated plaintiff, noting her addiction to pain medicine and stating "she wants very much to convey she has a seizure disorder." [R. 820]. Also during her admission, Dr. DiSalvatore, another physician at Claremore Regional, stated plaintiff "claims to have a seizure disorder but cannot really describe for me what the seizures are per se." [R. 853]. Two days later, plaintiff complained of abdominal pain at St. John's and was prescribed additional pain medicine.[2] [R. 498-99]. Four days afterward, plaintiff was seen at Claremore Regional with the same complaints of pain. [R. 760].

In September and October of 2007, plaintiff was hospitalized multiple times complaining of pain and breakthrough seizures. [R. 730, 456, 679, 405]. In December, Claremore Regional

---

[1] OU-internal medicine prescribed plaintiff more pain medicine; St. John's noted that plaintiff requested several different pain medications by name but refused to give her a prescription; and Claremore Regional prescribed her more pain medicine. [R. 662, 368, 787].
[2] While at St. John's, plaintiff claimed that a friend had stolen her Xanax and Lortab prescriptions, which she said she had refilled two days earlier. [R. 643].

4

treated plaintiff for abdominal pain, and in January, 2008, noted her headaches, depression, febrile seizures and anxiety attacks. [R. 709]. Two days later, plaintiff received a CT brain scan for seizures at St. John's. [R. 594]. The scan was normal. [R. 594]. On January 15, St. John's consulted Dr. Ralph Ritcher, M.D. who opined that plaintiff's seizures were likely pseudo seizures due to mental issues, and he recommended her to a social worker in psychiatry. [R. 586]. On January 25, OU Internal Medicine took plaintiff off her seizure medications and referred her to psychiatry noting, "she is shocked that she is not having seizures." [R. 614].

In October of 2005, doctors at Claremore Regional performed a physical exam after admitting plaintiff for an intentional drug overdose. [R. 284-301]. The records from this visit describe plaintiff as depressed, with a seizure disorder, asthma, a high blood alcohol level and a drug screen positive for benzodiazepines, tricyclics, and amphetamines. [R. 285]. On June 7, 2006, Dr. Beau Jennings performed a physical examination on plaintiff, stating she has seizure disorder, agoraphobia, and left shoulder dysfunction. [R. 316]. In February, 2007, consultative examiners Dr. Krishnamurthie and Dr. John Hickman filled out standardized social security forms detailing their opinions of plaintiff's state of impairment. Although both noted her mental disorders and seizure disorders, when asked if plaintiff's impairments were severe enough to equal a listing, Dr. Krishnamurthie responded "no", while Dr. Hickman responded "insufficient data." [R. 351, 348].

In July 2005, Dr. Stephanie Crall, a licensed psychologist, conducted a social security mental health disability examination of plaintiff and diagnosed her with chronic moderate depression and panic disorder. [R. 263]. Dr. Crall believed plaintiff was being truthful in her self-reports. [R. 263]. Dr. Crall indicated plaintiff was markedly limited in her ability to interact appropriately with the general public and her ability to understand, remember, and carry out

5

detailed instructions. [R. 266, 267]. Like Dr. Crall, Dr. Hickman believed that plaintiff was being candid in her self-reports; however, he assessed her as being capable of performing most activities with no limitation or no significant limitation, and a few tasks with moderate limitation. [R. 991-1000]. Also, a July, 2008, RFC physical assessment by consultative examiner Dr. Sri K. Reddy suggests that plaintiff has a high level of functioning. [R. 975-982].

Irrespective of whether plaintiff believed herself to be candid, a number of her medical records indicate that she did not reliably self-report, or at a minimum, overstated, her medical problems. For instance, during a brief psychological exam on June 21, 2006, Dr. David Hansen concluded that the questionable validity of her self-reports made a formal diagnosis impossible. [R. 322-24]. During a March, 2007 psychological exam, Dr. Minor Gordon, Ph.D. conducted a series of psychological and learning tests on plaintiff. Referencing plaintiff's results of the Minnesota Multiphasic Personality Inventory-II, Dr. Gordon explained "psychological testing reveals [plaintiff has] a very strong inclination to overstate her problems as well as to put forth very little effort during the assessment of her intelligence." [R. 361-62]. Dr. Gordon ultimately labeled plaintiff's impairment as "mild," concluding she is capable of interacting superficially with co-workers and completing routine and repetitive tasks on a regular basis. [R. 362]. Likewise, Dr. Karen Kendall, Ph.D., who conducted plaintiff's August, 2005, psychiatric review technique, concluded that plaintiff has good math skills, good vocabulary and is able to perform simple mental tasks even though her immediate memory is poor and her judgment and insight are lacking. [R. 270, 282]. Dr. Kamschaefer, Psy.D., who performed plaintiff's July, 2006, psychiatric review technique, noted her affective disorder was not a severe impairment. [R. 325].

6

## The ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since her application date of April 21, 2005. [R. 17]. He determined that plaintiff had the severe impairments of bipolar disorder, anxiety, seizures, and bronchitis through the date last insured, but that her severe impairments did not meet or medically equal any of the listed impairments. [R. 17]. The ALJ found her mental difficulties were typically mild or moderate but her limitations were not "marked" and therefore did not meet a listing.[3] [R. 18]. The ALJ found plaintiff has the RFC to perform light work, except lifting/carrying 20 pounds occasionally and 10 pounds frequently. [R. 19]. The ALJ found plaintiff can stand, walk, or sit for six hours out of an eight hour workday. [R. 19]. The ALJ noted that plaintiff cannot balance, climb ladders, ropes, or scaffolding, but can occasionally reach above the head with her left hand. [R. 19]. The ALJ found that plaintiff would need to avoid all fumes, odors, dusts, hazardous machinery, unprotected heights, driving, and contact with the public, but noted she is capable of performing moderately complex work. [R. 19]. The ALJ noted plaintiff is a younger individual,[4] has a high school education, and is able to communicate in English. [R. 23]. Additionally, the ALJ found that although plaintiff's job skills are not necessarily transferable, there are jobs existing in significant numbers in the national economy that she is capable of performing. [R. 19]. Based on the vocational expert's testimony regarding plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff was able to perform the representative occupations of card assembler, bench assembler, and electrical assembler. [R. 23]. Accordingly, the ALJ determined that plaintiff was not disabled as defined by the Social Security Act from the alleged date of onset through the date last insured. [R. 24]. This finding was made at step five in the

---

[3] A marked limitation means more than moderate but less than extreme. [R. 18].
[4] A "younger individual" is defined by 20 CFR 416.963 as an individual age 18-49 years old.

five-step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[5]

**Discussion**

First, plaintiff claims the ALJ failed to sufficiently include her mental limitations in the formulation of her RFC. [Dkt. #16 at 6]. She specifically complains that the ALJ improperly "glosse[d] over" her multiple suicide attempts. Plaintiff claims that the mental limitations included in the RFC, specifically the restriction to moderately complex work and the prohibition of contact with the public, are insufficient. Plaintiff claims this insufficiency resulted in the formulation of an RFC requiring greater abilities than she possesses. [Dkt. # 16 at 7]. Plaintiff further argues that the ALJ improperly disregarded medical records and opinions by treating physicians. However, plaintiff also argues that the ALJ erred by relying on an expert rather than the consultative examinations by Dr. Crall, Dr. Gordon, and Dr. Hickman. [Dkt. # 16 at 8, 9]. Plaintiff alleges that the ALJ's faulty credibility analysis caused him to improperly interject his own medical opinion concerning the seriousness of plaintiff's impairment. [Dkt. # 16 at 9, 10]. As a result of an allegedly improper RFC, plaintiff claims the ALJ erred in determining that she could perform other work. [Dkt. # 16 at 11].

The Court finds that the ALJ sufficiently documented the inconsistent information contained in the opinions and treatment notes of plaintiff's treating and nontreating physicians, thereby explaining the weight he accorded each of those opinions. Additionally, the Court finds

---

[5] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

that the ALJ thoroughly documented his credibility analysis. The ALJ correctly relied, in making his determination, on the numerous opinions of treating physicians, many of whom questioned plaintiff's credibility.

The Court first turns to plaintiff's argument that the ALJ failed to conduct a proper credibility determination. [Dkt. #16 at 10]. The exaggeration of symptoms in order to obtain government benefits is not to be taken lightly; therefore, an ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). In reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." Casias, 933 F.2d 799 at 801. See also Diaz v. Sec'y of Health & Human Serv., 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact."). In making a proper credibility finding, an ALJ must not have simply listed and recited the factors that are set forth in Social Security Ruling 96-7p, 1996 WL 374186. "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d at 1133 (footnote omitted). In his decision, the ALJ clearly and affirmatively linked his adverse determination of plaintiff's credibility to substantial record evidence.

The ALJ cited substantial evidence discrediting plaintiff's claimed ailments as well as her subjective complaints. He specifically mentioned the notes from her April 10, 2006 and June 26, 2006 interviews where plaintiff said she could not dress herself, but was fashionably dressed; said she could not use a remote control, but used her cell phone during the interview; said she could not read, but read from a business card; said she could not walk more than a few steps, but walked without trouble showing no difficulty climbing stairs; and said she could not see because

9

of glaucoma, but read from a computer screen ten feet away. [R. 146, 147, 323]. Furthermore, the ALJ mentioned several inconsistencies from the record as a whole. He noted her unsubstantiated claim of glaucoma, her inconsistent self-reporting of seizure activity, and the report of her friend describing her seizures as far more extreme than substantiated anywhere else in the record. [R. 21]. Finally, the ALJ noted her inconsistent self-reports of drug abuse. [R. 21]. The ALJ set forth the specific evidence he relied upon, and he linked that evidence to his findings. In addition, the ALJ applied the correct legal standards in evaluating plaintiff's subjective allegations of her impairments. Thus, the ALJ's determination that "it is noted throughout the medical evidence that the claimant has exaggerated her symptoms and has not been credible" is supported by substantial evidence in the record. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.[6]

Next, Plaintiff claims the ALJ improperly disregarded her treating physicians' opinions of her mental status and the medical records from the consultative examiners. In determining whether a claimant is disabled, "[a]n ALJ must evaluate every medical opinion in the record" and decide what weight to give each opinion. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). When making his decision, the ALJ must "give good reasons" for the weight he ultimately assigns to the opinion of each doctor. 20 C.F.R. § 404.1527(d)(2). The ALJ is required to explain the weight assigned to plaintiff's treating physicians' opinions and medical expert's opinion. 20 C.F.R. § 404.1527(f)(2)(ii). The ALJ's decision must explain "the weight given to the opinions of a State agency medical or psychological consultant or other program

---

[6] Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) "We recognize that some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the fact-finder's assessment of credibility is the general rule." Id.

physician or psychologist, as the [ALJ] must do for any opinion from treating sources, or nontreating source." 20 C.F.R. § 404.1527(f)(2)(ii).

As to her treating physicians' opinions, plaintiff is incorrect. [Dkt #16 at 8]. Plaintiff's treating physicians consist almost entirely of emergency room and hospital personnel. [R. 17, 18, 19, 21]. In fact, none of the doctors in the record are clearly "able to provide a detailed, longitudinal picture of [her] medical impairment(s)." 20 C.F.R. § 416.927(d)(2). Nonetheless, the ALJ discusses plaintiff's hospital visits resulting from problems with her shoulder, asthma, depression, seizure disorder, and drug abuse. [R. 18, 19, 21]. The ALJ considers plaintiff's hospital visits on August, 2003, and October, 2005, for intentional drug overdose, her hospitalization for alleged suicidal ideation, and her symptoms of agoraphobia, depression, anxiety, drug abuse, and panic attacks. [R. 17, 18, 21]. In fact, the ALJ concludes that plaintiff cannot perform past relevant work based on these mental limitations saying, the RFC "does not allow for contact with the public and a waitress has constant contact with the public." [R. 23]. As such, the ALJ in no way disregarded medical records and opinions by treating physicians.

Plaintiff alleges the ALJ erroneously determined her RFC by relying most heavily on the testimony of Dr. Krishnamurthi, the medical expert at the hearing, rather than relying on the results of her consultative examinations. However, the ALJ did not dismiss the opinions of the consultative examiners. He included paragraphs summarizing Dr. Hickman's opinion that plaintiff has moderate difficulties. [R. 17, 18]. The ALJ also relied heavily on Dr. Gordon's opinion that plaintiff was not credible, appeared to have an ongoing problem with illicit drug abuse, and should be able to perform some type of routine and repetitive task on a regular basis. [R. 21].

While it is true the ALJ did not mention consultative examiner, Dr. Crall, by name, he did perform a detailed analysis of plaintiff's credibility and conclude that "due to the [plaintiff's] lack of credibility, the consultative examinations do not carry the weight they normally would have." [R. 22]. The record as a whole suggests that plaintiff exaggerated her symptoms which the ALJ found to detract from the relevance of the consultative doctors' reports. See Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007) (doctor's opinion given less weight because it rested on discredited subjective complaints). Although the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," the examination of Dr. Crall is neither uncontroverted nor significantly probative. Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).

Dr. Crall's examination is the oldest of three consultative examinations and offers basically the same information as the other two examinations. The ALJ discusses the other two consultative examinations in detail. Dr. Crall's examination takes the same form as the others and for the most part contains the same results, except her finding that plaintiff had "marked" rather than "moderate" limitations interacting normally with others and understanding, remembering, and performing detailed instructions. [R. 280]. Dr. Crall stated she believed plaintiff was truthful, but had not attempted to verify plaintiff's information. In light of the ALJ's credibility determination, Dr. Crall's examination is not uncontroverted, as it rests on discredited complaints by plaintiff. Moreover, "the ALJ need not discuss every piece of evidence." Schmidt v. Astrue, 2008 WL 4452110 (D. Colo. Sept. 30, 2008) (citing Clifton, 79 F.3d 1007 at 1009, 1010). Although the ALJ did not mention Dr. Crall's examination by name, her conclusions are accounted for in his formulation of plaintiff's RFC. To allow for plaintiff's limitation in interacting appropriately with the public, the ALJ formulated an RFC that does not

12

allow for contact with the public. [R. 19]. To compensate for her difficulty following detailed instructions, the ALJ limits plaintiff's RFC to only moderately complex work. [R. 19].

"The ALJ may not pick and choose partial entries in a medical record to support his ruling, he must consider the record as a whole." Schwarz v. Barnhart, 70 Fed. Appx. 512, 518 (10th Cir. 2003) (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)). Because the ALJ correctly determined that the record as a whole showed the plaintiff lacked credibility, he accorded less weight to the parts of physicians' opinions that rely solely on her self-reports. Because psychological testing revealed that plaintiff had a very strong inclination to overstate her problems and put forth very little effort during assessment, the plaintiff's psychological testing results as a whole were unreliable. Instead of choosing "partial entries in [the] medical record" to rely on, the ALJ appropriately relied primarily on the testimony of the medical expert at the hearing to establish an accurate RFC.[7] [R. 22]. Thus, the ALJ gave "good reason" for the weight he ultimately assigned the other doctors.

Second, plaintiff complains that the ALJ erroneously determined there was other work claimant can perform. Plaintiff suggests that because the RFC was inaccurate and was the basis for the hypothetical, the vocational expert's conclusions are invalid. As discussed above, the ALJ relied on the opinions of treating physicians and consultative examinations to find that plaintiff lacked credibility. Based on this lack of credibility, the ALJ accorded greater weight to Dr. Krishnamurthi, the medical expert at the hearing.

The ALJ found that plaintiff has the RFC to perform light work except for the following limitations:

---

[7] "In sum, the above residual functional capacity assessment is supported mainly by the testimony of Dr. Krishnamurthi, the medical expert at the hearing. Due to the claimant's lack of credibility, the consultative examinations do not carry the weight they would normally have." [R. 22].

> Occasionally lift and/or carry: 20 pounds;
> Frequently lift and/or carry: 10 pounds;
> Stand and/or walk: about 6 hours in an 8-hour workday;
> Sit for a total of: about 6 hours in an 8-hour workday; and
> Push and/or pull: unlimited, other than as shown for lift and/or carry

[R. 19]. Furthermore, the ALJ found that plaintiff cannot balance, climb ladders, ropes, or scaffolding, and she needs to avoid contact with fumes, odors, and dusts and hazardous or fast machinery, unprotect heights and driving. [R. 19]. The ALJ also concluded plaintiff is physically capable of occasionally reaching above the head with her left hand, frequently climbing stairs, bending, stooping, crouching, kneeling and crawling, and is mentally capable of performing moderately complex work with no contact with the public. [R. 19].

Moreover, although the ALJ determined plaintiff's subjective complaints were not fully credible, he did "not discount all of the [plaintiff's] complaints." [R. 24]. He found that plaintiff was impaired, but plaintiff still retained the RFC for work activity in spite of the combination of her impairments. [R. 22]. The ALJ determined plaintiff had the RFC to perform the full range of light work, but noted her additional limitations. The ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the plaintiff's age, education, work experience, and RFC. When considering the above listed limitations, including those related to plaintiff's alleged seizure activity, shoulder injury, and asthma, the vocational expert opined that plaintiff could perform the requirements of occupations such as card assembler, bench assembler, or electrical assembler. [R. 23].

The ALJ properly supported his hypothetical question and was therefore entitled to rely on the vocational expert's answer. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). Given plaintiff's credibility problem, the ALJ's hypothetical question precisely reflected plaintiff's impairments and alleged impairments. Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).

## **Conclusion**

The Court finds that the ALJ appropriately considered all of plaintiff's impairments. The ALJ appropriately considered and weighed the opinions of treating physicians, consultative examiners, and the medical expert at trial. The Court also finds the ALJ's credibility determination is closely and affirmatively supported by substantial evidence in the record. The Court further finds that the ALJ performed a proper evaluation at step five of the sequential process. Accordingly, the decision of the Commissioner finding plaintiff not disabled is AFFIRMED.

SO ORDERED this 31st day of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge